[No. B052280. Second Dist., Div. One. June 28, 1991.]

INTERNATIONAL INSURANCE COMPANY, Cross-complainant,
Cross-defendant and Appellant, v.
MONTROSE CHEMICAL CORPORATION OF CALIFORNIA,
Cross-defendant, Cross-complainant, and Respondent.

## COUNSEL

Orrick, Herrington & Sutcliffe, Robert E. Freitas, Jon B. Streeter and William W. Oxley for Cross-complainant, Cross-defendant and Appellant.

Latham & Watkins, David L. Mulliken, G. Andrew Lundberg, Richard A. Conn, Jr., and Philip G. Evans, for Cross-defendant, Cross-complainant, and Respondent.

## OPINION

**VOGEL, J.**—Montrose Chemical Corporation of California and International Insurance Company are involved in litigation to determine whether various insurance companies are obligated to indemnify Montrose for hazardous waste pollution problems at several sites in California. International appeals from an order imposing discovery sanctions against it. We affirm and impose further sanctions for a frivolous appeal.

## FACTS

During the 1980's, Richard J. Power was an independent claims adjuster who did some work for International on Montrose's claim. According to Montrose, Power's initial communication "acknowledged coverage" by International, an assertion vehemently disputed by International.

Power now lives in Connecticut. Following appropriate procedures, Montrose set Power's deposition for three days, beginning April 2, 1990, in Connecticut. Power appeared for his deposition, represented by International's attorney at International's expense.[1] During the deposition it became apparent that, in preparation for Power's testimony, International's attorney had provided numerous documents to Power to refresh his recollection.

After establishing that Power had spent one or two hours reviewing International's documents (it is undisputed that the documents were all International's, that none were Power's, and that they were all in the possession of International's attorney), counsel for Montrose asked International to produce the documents Power had reviewed. International refused and Power did not appear for the third day of his deposition.

Montrose filed a motion to compel International to produce the documents and asked for sanctions. (The motion also addressed Power's failure to return for the third day of his deposition, but that issue is not before us.) International opposed the motion, contending that Montrose was required to apply to the Connecticut court for appropriate orders and asserting that Connecticut law, not California law, was determinative. The trial court (based on a discovery referee's report and on the court's independent evaluation of the issue following International's objections to the referee's report) granted Montrose's motion, ordered International to produce all documents shown to Power prior to his deposition, and also ordered International to pay $7,500 in sanctions. International appeals from the sanction award.

## DISCUSSION

International contends the sanction order must be reversed because the underlying order to produce was wrong as a matter of law and thus could not support an award of sanctions. Alternatively, International suggests that even

---

[1] For purposes of this appeal, the parties agree that Power was not an officer, director, managing agent or employee of a party to this action and was, therefore, a nonparty witness. (Code Civ. Proc., § 2026, subd. (b)(2).)

Unless otherwise stated, all section references are to the Code of Civil Procedure.

if the production order was correct, its refusal to produce was substantially justified. Finally, assuming we reject both claims of error, International asserts that the amount awarded is not supported by the record.

## I.

We begin by rejecting International's contention that Connecticut law governs production of the documents and conclude that the order to produce was correct under California law.

### A.

Subdivision (b)(2) of section 2026 permits a party to California litigation to depose a nonparty in another state according to the "process and procedures" required and available under the laws of the other state. International construes this to mean that Montrose's request to International for the documents shown to Power had to be made to the Connecticut court, in accordance with Connecticut law, and a court order obtained as a precondition to production of the documents. (*State of Connecticut* v. *Watson* (1973) 165 Conn. 577 [345 A.2d 532, 541] [under Connecticut law, a court order is required to obtain documents used to refresh a witness's recollection].)

International is wrong for at least two reasons. First and foremost, Montrose did not seek documents belonging to or in the possession of Power. The documents belonged to International and International cannot immunize itself from California's liberal discovery rules by showing the documents to a non-California resident. That is nonsense, pure and simple. Second, except as expressly provided otherwise in the Discovery Act, California law governs discovery in California cases, including depositions. (See § 2025, subd. (a).) Thus, although section 2026 compelled Montrose to follow Connecticut law in noticing Power's deposition, California law governs Montrose's request to International for the documents used by Power to refresh his recollection. International was not the "deponent" referred to in section 2026, subdivision (b)(2).

### B.

We next reject International's contention that Montrose had no right to the documents under California law because (according to International) section 771 of the Evidence Code compels a foundation beyond that which was laid by Montrose.

Subdivision (a) of section 771 of the Evidence Code provides, as relevant, that "if a witness, either while testifying or prior thereto, uses a writing to refresh his memory with respect to any matter about which he testifies, such writing must be produced at the hearing at the request of an adverse party and, unless the writing is so produced, the testimony of the witness concerning such matter shall be stricken . . . ."[2]

Relying on inapposite cases interpreting the Federal Rules of Evidence in other Circuits (*United States* v. *Larranaga* (10th Cir. 1986) 787 F.2d 489, 501; *United States* v. *Wright* (D.C. Cir. 1973) 489 F.2d 1181, 1189),[3] International insists that Evidence Code section 771 "does not authorize wholesale demands for every document a witness might have seen" and, therefore, inspection is justified only when the examining attorney establishes which "particular writing" the witness has used to refresh his recollection on a "particular subject" included in the witness' testimony. That is not the law in California.

Evidence Code section 771 requires the production of documents used to refresh Power's memory with respect to any matter about which he testifies, no more and no less. After testifying that he had no specific recollection about how he learned that International would pay for an attorney to represent him in these proceedings, Power was asked by Montrose's attorney whether, in preparation for the deposition, Power had looked at documents to assist him in remembering events that took place in the past. Power answered affirmatively, explaining that he spent one or two hours reviewing documents and that, after his review, he had a "fresher recollection of what had taken place" than he had prior to the session. Power also explained that, without all of the documents in front of him, he could not recall which ones actually refreshed his recollection and which did not, and that "anything [he] looked at probably gave [him] some benefit of refreshing [his] recollection."

No more is required. Under the plain language of Evidence Code section 771, Power used the documents to refresh his memory with regard to his testimony concerning International's payment of his attorney's fees and International therefore became obligated to produce them. No further

---

[2]Evidence Code section 771 applies to deposition testimony. (§ 2025, subd. (*l*) ["Examination and cross-examination of the deponent shall proceed as permitted at trial under the provisions of the Evidence Code"].)

[3]Unlike Evidence Code section 771, rule 612 of the Federal Rules of Evidence provides that when a witness uses a writing to refresh his recollection before testifying, "*if the court in its discretion determines it is necessary in the interests of justice*, an adverse party is entitled to have the writing produced at the hearing . . . ." (Italics added.)

Evidence Code section 771 is mandatory and self-executing, and no court order is required.

"foundation" was required and, in this context, there was no need (and there was no way) to establish which of several documents actually refreshed Power's memory on a particular point.[4]

Since the documents had to be disclosed one way or the other (see, e.g., §§ 2031; 2035, subd. (d)(4)), the refusal to respond to Montrose's request was not only discourteous, but also parsimonious and unprofessional.[5] (See *Filipoff* v. *Superior Court* (1961) 56 Cal.2d 443, 452 [15 Cal.Rptr. 139, 364 P.2d 315] [documents used to refresh a witness's recollection at a deposition would be admissible at trial on cross-examination for impeachment purposes, but even without such a showing of admissibility they would be relevant and discoverable where no claim of privilege is made]; 3 Witkin, Cal. Evidence (3d ed. 1986) Introduction of Evidence at Trial, § 1834, pp. 1791-1792.)[6]

## II.

International also complains that the award of $7,500 is too high and unsupported by the record because only a small portion of Montrose's motion addressed the documents, the balance having been directed to Power's failure to appear for the third day of his deposition. We find the amount reasonable.

---

[4]At Power's deposition, no objections to the documents were raised on attorney-client privilege or work product grounds and those objections were therefore waived. (§ 2025, subd. (m)(1).)

[5]As an example of International's discourtesy, we quote from the deposition transcript following the request for the documents asserted by Montrose (and joined in by another party, Stauffer Chemical Company):

"Mr. Freitas [International's attorney]: Go ahead and ask your questions.
"Mr. Jacobs [Stauffer's attorney]: Do you have a response to [our] polite request to you?
"Mr. Freitas: I just made my polite response, which was go ahead and ask your questions.
"Mr. Jacobs: I think we are entitled to a little more than that, Mr. Freitas.
"Mr. Freitas: I said go ahead and ask your questions.
"Mr. Conn [Montrose's attorney]: I presume you are refusing to turn over the documents?
"Mr. Freitas: Absolutely not.
"Mr. Jacobs: Are you agreeing to produce the documents?
"Mr. Freitas: No.
"Mr. Conn: Are you taking a position?
"Mr. Freitas: I am taking a position.
"Mr. Conn: What is that?
"Mr. Freitas: Ask your questions."

[6]International's contention that sanctions should not have been imposed because its conduct in opposing Montrose's motion to compel production was "substantially justified" within the meaning of subdivision (b)(1) of section 2023 (which mandates monetary sanctions unless the trial court finds that opposition to a discovery motion was made with substantial justification or under other circumstances making an award of sanctions unjust) is supported by the identical arguments rejected above. We reject this contention for the reasons explained above.

Montrose asked for a total of $19,695 in fees and costs for preparing the motion, supporting declarations and reply papers. The referee (finding an "egregious abuse of discovery") determined that $7,500 was a reasonable portion to attribute to the document request and the trial court agreed, exercising restraint to overcome its instinct to "set a higher amount." (See *Mattco Forge, Inc.* v. *Arthur Young & Co.* (1990) 223 Cal.App.3d 1429, 1437 [273 Cal.Rptr. 262].) We too believe the amount is low but affirm it because it is reasonable and certainly not an abuse of discretion. (*Calvert Fire Ins. Co.* v. *Cropper* (1983) 141 Cal.App.3d 901, 904 [190 Cal.Rptr. 593] [the power to impose discovery sanctions is within the broad discretion of the trial court, subject to reversal only for arbitrary, capricious or whimsical action].)

### III.

In its respondent's brief, Montrose asks us to impose sanctions against International and its attorneys for a frivolous appeal, in the amount of $3,690. Although International filed a reply brief, it failed to respond to this issue. At oral argument, we gave International an opportunity to argue the issue but it simply regurgitated the arguments rejected above and failed to offer any reasonable explanation for its pursuit of this appeal. We believe this case cries out for sanctions on appeal and we therefore grant Montrose's motion. (See *National Secretarial Service, Inc.* v. *Froehlich* (1989) 210 Cal.App.3d 510, 524, fn. 12 [258 Cal.Rptr. 506] [a request for sanctions made in a respondent's brief is "fair warning that such sanctions would be considered by the court"].)

First, International has had notice and an opportunity to respond by reason of Montrose's request in its respondent's brief. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 652 [183 Cal.Rptr. 508, 646 P.2d 179].) Second, International's arguments are wholly, totally, completely, and unequivocally without merit. That they have been asserted in bad faith and for an improper purpose is demonstrated by International's continuing insistence that Montrose must apply to a Connecticut court in order to obtain documents belonging to International and placed in issue by International's assistance to a nonparty witness whose favorable testimony is crucial to International.

International's bad faith is clear. Although we are not directly concerned on this appeal with Power's failure to appear on the third day of his deposition, we agree with the referee that the circumstances surrounding that event are suspicious and all point to improper conduct by International. For example, counsel for Montrose and all other parties appeared for the third

day of Power's deposition—except counsel for International, who remained comfortably ensconced in his hotel, clearly aware that Power did not intend to appear. This conduct supports our conclusion that International has pursued a patently unwinnable appeal for improper purposes. (See also fn. 5, *ante.*)

The record demonstrates a pattern of hardball, abusive discovery tactics by International, intimidation cloaked in the mantle of forceful advocacy, a relentless refusal to accommodate a legitimate request, all to further International's attempt to win by attrition when escalating expenses threaten all adversaries with financial ruin. Montrose's ability to absorb expenses with greater ease than the average litigant does not diminish the egregiousness of International's conduct.

## DISPOSITION

The order is affirmed. Montrose is to recover its costs on appeal. International and its attorneys, Orrick, Herrington & Sutcliffe, are ordered to pay to Montrose as sanctions for a frivolous appeal the sum of $3,690, payable forthwith.

Spencer, P. J., and Devich, J., concurred.