[No. D035161. Fourth Dist., Div. One. Jan. 11, 2002.]

SAN DIEGO UNIFIED PORT DISTRICT, Plaintiff and Respondent, v. DOUGLAS E. BARNHART, INC., et al., Defendants and Appellants.

**COUNSEL**

Marks & Golia, Robert J. Marks, P. Randolph Finch, Jr., and Jason R. Thornton for Defendant and Appellant Douglas E. Barnhart, Inc.

Manning & Marder, Kass, Ellrod, Ramirez and John D. Marino for Defendant and Appellant SGPA Architecture and Planning.

Murphy, Austin, Adams, Schoenfeld, D. Michael Schoenfeld and V. Blair Shahbazian for Plaintiff and Respondent.

## OPINION

**BENKE, Acting P. J.**—Plaintiff San Diego Unified Port District (the District) filed the instant action against defendants Douglas E. Barnhart, Inc. (Barnhart), SGPA Architecture and Planning (SGPA) and others for professional negligence and related causes of action based on alleged defects in the construction of a new terminal at the San Diego International Airport (Lindbergh Field), including defects in the design and construction of the terminal's natural stone floor. ▄▄█ Barnhart and SGPA separately appeal an order requiring them to contribute to the cost of destructive testing to be performed on the floor.[1] They contend the order was an abuse of the court's discretion because they did not request the testing and the court did not order other similarly situated defendants to contribute to the cost of the testing. We conclude the court lacked authority to order defendants to pay for the testing.

### FACTUAL AND PROCEDURAL BACKGROUND

SGPA was the primary designer of the new terminal (the project) and Barnhart was the prime contractor for the project. SGPA subcontracted with the design firm of Gensler & Associates (Gensler) to assist in the project's design, which included a natural stone floor. Gensler specified certain stone tiles to be used in the construction of the floor. Barnhart subcontracted with Cleveland Marble Mosaic Company (Cleveland) to install the floor and Cleveland contracted with Walker Zanger West Coast, Ltd. (Zanger) to supply some of the stone tiles for the floor. Barnhart, SGPA, Gensler, Cleveland and Zanger are all named as defendants in the District's complaint.

The trial court deemed the instant action complex and issued a case management order "to reduce the cost of litigation, to assist the parties in resolving their disputes if possible, and if not, to reduce the costs and difficulties of discovery and trial." The order appointed a special master under Code of Civil Procedure[2] sections 638 and 639 to "coordinate and manage the discovery process (including document discovery and destructive testing), to hear and determine any and all discovery motions and disputes [in the action], to report findings and make recommendations

---

[1]The order is appealable as a collateral order directing the payment of money. (*Asbestos Claims Facility v. Berry & Berry* (1990) 219 Cal.App.3d 9, 18 [267 Cal.Rptr. 896], disapproved on other grounds in *Kowis v. Howard* (1992) 3 Cal.4th 888, 896-897 [12 Cal.Rptr.2d 728, 838 P.2d 250]; *Samuel v. Stevedoring Services* (1994) 24 Cal.App.4th 414, 418 [29 Cal.Rptr.2d 420].)

[2]All further statutory references are to the Code of Civil Procedure.

thereon . . . and to manage, organize and mediate the Action . . . ." The case management order directed any parties interested in conducting destructive testing on the stone floor to disclose their interests in writing to the special master and to meet and confer about the specifics of the testing, after which the special master would convene an "all hands" meeting and issue an order concerning the timing, manner, costs and protocol of the testing.

Cleveland, Gensler and Zanger requested testing on the stone floor and submitted outlines of proposed testing to the special master. On August 4, 1992, counsel for the District, Barnhart, SGPA, Cleveland, Gensler and Zanger attended a meeting with the special master to work out the details of a joint testing protocol. The next day counsel for the District circulated a letter outlining the testing protocol and stating that all six parties at the August 4 meeting had agreed to contribute $8,500 to pay for the testing. Barnhart and SGPA immediately responded that they had not agreed to share in the cost of the testing and did not want to perform the testing. Following a telephone conference call between the special master and counsel, the special master concluded Barnhart, SGPA and the other four parties who attended the August 4 meeting were all involved in the stone tile issues and therefore should share equally in the cost of the destructive testing. The special master sent the court a written recommendation and proposed order to that effect.

On October 6, 1999, Barnhart and SGPA filed written objections to the special master's recommended order. The court signed the order on October 8, but set a hearing on Barnhart and SGPA's objections for October 29. On October 29, the court denied "SGPA and Barnhart's motions challenging the order requiring them to pay a share of the cost of destructive testing." The court stated: "SGPA and Barnhart are involved sufficiently enough in the flooring issue to potentially benefit from the testing. However, the special master is directed to consider when any additional parties appear whether they too should be required to pay a share of the testing cost. Once the special master identifies those parties, the court will modify the order accordingly."

## DISCUSSION

Barnhart and SGPA and the District are in agreement that whether the court had authority to order Barnhart and SGPA to contribute to the cost of destructive testing is a question of law involving undisputed facts and therefore is subject to our de novo review. The parties also essentially agree that to the extent the court had authority to order Barnhart and SGPA to

contribute to the cost of the testing, the order is subject to review for abuse of discretion.

We agree with the parties' analysis of the standard of review. ■ An appellate court reviews a trial court's exercise of discretion as a question of law where, as here, the relevant facts are undisputed. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1144 [86 Cal.Rptr.2d 816, 980 P.2d 371].) ■ Although a trial court's discretion in discovery matters is broad, if there is no legal basis for an exercise of that discretion it must be held that an abuse of discretion occurred. (*Lehman v. Superior Court* (1986) 179 Cal.App.3d 558, 562 [224 Cal.Rptr. 572].)

■ We conclude the court abused its discretion by ordering Barnhart and SGPA to share in the cost of destructive testing because we find no legal basis for that exercise of discretion. No California statute authorizes a trial court to order litigants before trial to pay for destructive testing or any other discovery they do not wish to pursue, and we have found no case authority from California or any other jurisdiction expressly addressing the issue. In defense of the court's order, the District relies principally on *Asbestos Claims Facility v. Berry & Berry, supra,* 219 Cal.App.3d at page 19, for the general proposition that trial courts have inherent power "to exercise reasonable control over all proceedings connected with pending litigation, including discovery matters, in order to insure the orderly administration of justice. [Citation.]"

It is a well-accepted principle that each party to litigation normally bears the ordinary burden of financing his or her own suit. (*In re Puerto Rico Elec. Power Authority* (1st Cir. 1982) 687 F.2d 501, 506, 507 [party not required to bear cost of translating Spanish-language documents it produced at opposing party's request]; *Eisen v. Carlisle & Jaquelin* (1974) 417 U.S. 156, 179 [94 S.Ct. 2140, 2153, 40 L.Ed.2d 732] [plaintiff in federal class action required to pay cost of notice to class].) That principle is violated when a party is ordered to pay for discovery sought by another party.

In *In re Puerto Rico Elec. Power Authority*, the appellate court noted that although parties are expected to bear expenses typically involved in responding to discovery requests, such as the expense of producing documents, answering interrogatories or submitting to depositions, "each party seeking discovery is expected to bear any *special attendant* costs." (*In re Puerto Rico Elec. Power Authority, supra,* 687 F.2d at p. 507, italics added.) The court's quoted statement reflects a principle of fundamental fairness and equity:

When a party demands discovery involving significant "special attendant" costs beyond those typically involved in responding to routine discovery, the demanding party should bear those costs. This principle is reflected in certain California discovery statutes. Section 2034, subdivision (i)(3), requires a party seeking to depose another party's retained expert to pay the expert's fee for appearing for deposition. Under section 2025, subdivision (p), the party noticing a deposition ordinarily bears the cost of transcribing the deposition.[3]

The court's rationale for ordering Barnhart and SGPA to contribute to the cost of the destructive testing essentially was that they would potentially benefit from the discovery. However, the possibility that discovery will reveal evidence beneficial to parties other than the party pursuing the discovery is inherent in the discovery process itself and exists in virtually any type of discovery. A defense witness might provide deposition testimony that benefits a plaintiff; a plaintiff's answers to a defendant's special interrogatories might exonerate a codefendant who did not serve interrogatories. Because the essential point of the discovery process is to ascertain truth by bringing unknown facts to light, there is always a possibility discovery will reveal evidence that benefits a party other than the propounding party. That potential benefit to nonpropounding parties is not a valid reason to force nonpropounding parties to pay for discovery they choose not to pursue.

We conclude that court's inherent power to exercise *reasonable* control over discovery matters did not authorize it to order Barnhart and SGPA to pay for destructive testing they did not want. Parties on both sides of a case generally should be free to control the cost and strategy of their litigation and not be forced by pretrial court orders to incur substantial, nonrecoverable costs for unwanted discovery. Although parties should expect to pay certain costs incurred in responding to discovery requests, Barnhart and SGPA in the present case are not even in the position of responding parties with respect to the destructive testing. Because there is simply no legal justification for the order forcing them to contribute to the cost of the testing, we conclude the order was an abuse of discretion.

---

[3]Section 2025, subdivision (p) authorizes the court to order "on motion and for good cause shown . . . that the [deposition transcription] cost be borne or shared by another party." An example of such "good cause" is where "another party engaged in prolonged arguments and 'speeches' throughout the deposition, and refused to go 'off the record' with these. Or, where after the deposing party finished, the other party engaged in prolonged 'cross-examination,' dragging out the deposition much longer than reasonably necessary." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2000) ¶ 8:767.2, p. 8E-88.)

## DISPOSITION

The order requiring Barnhart and SGPA to contribute to the cost of destructive testing on the subject floor is reversed. The court is directed to vacate that order and issue a new order directing that the cost of the destructive testing is to be shared equally by the parties who have either affirmatively requested such testing or voluntarily agreed to contribute to its cost. Barnhart and SGPA are awarded their costs on appeal.

Haller, J., and McDonald, J., concurred.