[No. E039264. Fourth Dist., Div. Two. May 19, 2006.]

JOEL DRUM, Petitioner, v.
THE SUPERIOR COURT OF RIVERSIDE COUNTY, Respondent. ·

## COUNSEL

Joel Drum, in pro. per., for Petitioner.

No appearance for Respondent.

## OPINION

**RAMIREZ, P. J.**—Joel Drum (Drum) appeals from orders of the trial court imposing ever-increasing amounts of monetary sanctions upon him as the result of his repeated failure to appear at order to show cause hearings. He claims that the trial judge was biased and that his orders are therefore void, and in the alternative claims that the trial judge abused his discretion in imposing multiple sanctions orders against him. On our own motion we find that this appeal is untimely and must be dismissed for lack of jurisdiction pursuant to *Hollister Convalescent Hosp., Inc. v. Rico* (1975) 15 Cal.3d 660, 666–667 [125 Cal.Rptr. 757, 542 P.2d 1349] (*Hollister*) (see also *Laraway v. Pasadena Unified School Dist.* (2002) 98 Cal.App.4th 579, 582 [120 Cal.Rptr.2d 213]). In reaching this determination we disagree with the holding in *Lim v. Silverton* (1997) 61 Cal.App.4th Supp. 1 [72 Cal.Rptr.2d 408] (*Lim*). However, we also find that this case, because it involves uncertainty in the law with respect to the appealability of the monetary sanctions orders in question, presents special circumstances meriting treatment of the late appeal as a petition for an extraordinary writ. We deny the writ petition.

### FACTS AND PROCEDURAL HISTORY

Drum filed a complaint for subrogation on behalf of plaintiff California Casualty Insurance Company (CCIC) on January 30, 1998, against the defendant owner and defendant driver of an uninsured motor vehicle. The alleged negligence of those defendants caused CCIC to pay a claim to its insured as the result of an accident. The complaint sought damages in the amount of $6,086.89, which brought the matter into the jurisdiction of the

limited civil court. (Code Civ. Proc., §§ 85, 86.)[1] Judgment was entered on behalf of CCIC and against both defendants on November 16, 1998.

Nearly one year later the defendants filed a motion to quash service of summons for lack of personal jurisdiction. After a hearing, that motion was granted as to the defendant owner of the uninsured vehicle. At that time a status hearing was set for March 1, 2000. Drum failed to appear at that hearing and the trial court issued an order to show cause why sanctions should not be imposed or the matter dismissed for that failure. The status conference was continued to the same date. Drum again failed to appear so that on April 5, 2000, the trial court ordered sanctions against him in the amount of $250. It continued the status conference and issued another order to show cause regarding sanctions or dismissal and an order to show cause why unserved defendants should not be dismissed. On May 2, 2000, sanctions in the amount of $1,000 were ordered for Drum's failure to appear, and the hearing was again continued. Further, Drum was ordered to appear on May 23, 2000, to show cause why the case should not be dismissed and was told that if he did not appear the case would be dismissed and sanctions imposed. Again Drum did not appear. The trial court ordered sanctions against him in the amount of $1,500, continued the hearing again and reported him to the State Bar. Drum failed to appear on June 28, 2000, and on November 29, 2000, at which times sanctions in the amount of $2,000 and $3,000, respectively, were ordered against him.

Status conferences were held on 12 additional dates but no sanctions were ordered for Drum's continued failure to appear. Then, on August 28, 2001, Drum was sanctioned $3,500 for his failure to appear and was again ordered to be present in court. On February 2, 2002, the trial court imposed sanctions in the amount of $4,000. Another hearing passed at which no further sanctions were ordered. Then, on February 24, 2003, the trial court imposed additional sanctions in the amount of $4,500 for Drum's failure to appear on that date. Further sanctions of $5,000 were ordered for Drum's failure to appear on March 28, 2003. On September 29, 2003, the trial court ordered sanctions of $500, stayed to March 30, 2004. Although the record does not so reflect, Drum's notice of appeal indicates that the action was ordered dismissed on September 29, 2004.

The appeal was properly made to the appellate division of the superior court in that this is a limited civil case. (§ 904.2.) Because Drum failed to file a change of address during the time that he was ignoring the orders of the

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

trial court to appear, the appellate division mailed its request for additional briefing on the issue of the timeliness of the appeal and its ultimate opinion to an incorrect address. The appellate division filed its opinion, certified for publication, on October 19, 2005. Thereafter, on its own motion, this court ordered the appeal transferred to it under the authority provided in California Rules of Court, rules 62 and 64(a) in order to secure uniformity of decision and to settle an important question of law. This court determined that Drum had not had an opportunity to brief the issue of the timeliness of his appeal and allowed him to file a supplemental brief.

DISCUSSION

Drum urges as grounds for reversal of the trial court's sanctions orders (1) that the trial court was prejudiced against him as defined in section 170.1, subdivision (a)(6)(A)(iii) and (B), and the orders were therefore void, and (2) that the trial court abused its discretion in imposing monetary sanctions against him. However, because the timeliness of an appeal poses a jurisdictional issue, we must raise the point sua sponte and must consider that question first.

### A.   *The Appeal is Untimely*

Preliminarily, in his supplemental brief, Drum urges that Government Code section 68081 requires that we transfer this case back to the appellate division with directions that it vacate its opinion, allow him to file a brief on the issue of the timeliness of his appeal, and then rehear the matter. The appeal is considered de novo before this court and we have provided Drum with the chance to file a supplemental brief addressing the issues raised by the appellate division's opinion. He availed himself of that opportunity. The purpose of Government Code section 68081 having been served, we see no reason to consume additional time and court resources by insisting on further briefing and hearing of this matter below.

California Rules of Court, rule 122(a) provides, with exceptions that do not apply here, that a notice of appeal in a limited civil case must be filed within 30 days after mailing or service of notice of entry of a judgment or an appealable order, or within 90 days after the entry of judgment. Each of the orders imposing monetary sanctions from which Drum purports to appeal was entered more than 90 days prior to his filing a notice of appeal on October 29, 2004. Thus, if those were appealable orders, his appeal is not timely.

Historically, appeals from both limited and unlimited civil cases have been restricted by statute. With certain listed exceptions, an appeal may be taken only from a judgment, other than an interlocutory judgment. (§§ 904.1, 904.2.) This is more commonly known as the "one final judgment" rule. In addition to the statutory exceptions, the common law has developed its own rules governing appeals from orders that do not finally dispose of all issues before the trial court. One of those rules, extant since at least 1895, holds that an appeal is allowed if the order is essentially a final judgment against a party growing out of a matter collateral to the main proceeding, which either directs the appellant to pay money or directs some action be taken by or against the appellant. (*Sjoberg v. Hastorf* (1948) 33 Cal.2d 116, 119 [199 P.2d 668].) The "collateral judgment" or "collateral order" rule remains a viable exception to the one final judgment rule. (See *San Diego Unified Port Dist. v. Douglas E. Barnhart, Inc.* (2002) 95 Cal.App.4th 1400, 1402, fn. 1 [116 Cal.Rptr.2d 65] and *Marsh v. Mountain Zephyr, Inc.* (1996) 43 Cal.App.4th 289, 297–299 [50 Cal.Rptr.2d 493].)[2]

Under this collateral order rule, monetary sanctions orders had been held directly appealable as final judgments directing the payment of money. (*I. J. Weinrot, supra,* 40 Cal.3d at p. 331; *O'Brien v. Cseh* (1983) 148 Cal.App.3d 957, 960 [196 Cal.Rptr. 409].)[3] In 1989, the Legislature amended section 904.1 expressly to state that an appeal could be taken " '[f]rom a superior court judgment directing payment of monetary sanctions by a party or an attorney for a party only if the amount exceeds seven hundred fifty dollars ($750). Lesser sanction judgments against a party or an attorney for a party may be reviewed on an appeal by that party after entry of final judgment in the main action, or, at the discretion of the court of appeal, may be reviewed upon petition for an extraordinary writ.' " (*Rail-Transport, supra,* 46 Cal.App.4th at p. 472.) No similar amendment was made to section 904.2 providing for appeals from limited civil cases.

[2] In his supplemental brief, Drum cites numerous cases for the proposition that no judgment or order may be appealed unless it is expressly made appealable by the Constitution or by statute. Each of the cases he cites was decided prior to the Supreme Court's opinions in *I. J. Weinrot & Son, Inc. v. Jackson* (1985) 40 Cal.3d 327, 331 [220 Cal.Rptr. 103, 708 P.2d 682] (*I. J. Weinrot*) and *Bauguess v. Paine* (1978) 22 Cal.3d 626, 634, footnote 3 [150 Cal.Rptr. 461, 586 P.2d 942], superseded by statute on other grounds as stated in *Olmstead v. Arthur J. Gallagher & Co.* (2005) 32 Cal.4th 804, 809 [11 Cal.Rptr.3d 298, 86 P.3d 354], which expressly recognize and approve the collateral order rule.

[3] It is important to note that discovery sanctions have been treated differently such that under the common law, discovery sanctions were not directly appealable collateral orders. (*Hanna v. BankAmerica Business Credit, Inc.* (1993) 16 Cal.App.4th 913, 915 [20 Cal.Rptr.2d 430].) The question currently remains the subject of disagreement by the Courts of Appeal, which have requested guidance from the Legislature, to no avail. (*Rail-Transport Employees Assn. v. Union Pacific Motor Freight* (1996) 46 Cal.App.4th 469, 471–475 [54 Cal.Rptr.2d 713] (*Rail-Transport*).)

In 1993, section 904.1 was again amended to add subsections (11) and (12) to subdivision (a), which provide that an appeal may be taken directly from either an interlocutory judgment or an order directing the payment of monetary sanctions if the amount exceeds $5,000. Once again, the Legislature did not make any changes to section 904.2. The law respecting appeals from monetary sanctions orders in limited civil appeals has not changed. Consequently, the "collateral order" rule respecting monetary sanctions awards continues to apply such that in limited civil cases orders for monetary sanctions not involving discovery are immediately appealable. Because Drum did not appeal any of the orders for monetary sanctions in a timely fashion, his appeal must be dismissed.

■ In reaching the opposite conclusion, the court in *Lim, supra,* 61 Cal.App.4th at Supp. page 4 misapplied the rules of statutory construction. It recognized both the amendments to section 904.1 and the Legislature's failure similarly to amend section 904.2. It also recognized the rule that " '[w]hen a statute contains a particular provision, the omission of that provision from similar statutes on the same or a related subject reveals a different intent. [Citation.]' [Citation.]" (*Lim,* at pp. Supp. 3–4.) From this, however, it mistakenly ascribed to the Legislature the intent to exclude completely the direct appeal of any monetary sanctions orders in limited civil cases. It reasoned that section 904.2 did not have a specifically listed exception making judgments and orders for monetary sanctions directly appealable. Therefore, when the Legislature amended only section 904.1 to include a specific exception making certain of those orders directly appealable, and not section 904.2, the *Lim* court concluded that the exception applied only in unlimited civil cases.

In essence, the *Lim* court ignored the existence of the long standing common law exception and determined that in choosing to leave section 904.2 as it was, what the Legislature actually intended to do was to make that section more restrictive even than section 904.1, which it expressly amended. This is untenable. It does not follow that the Legislature's codification and limitation of a previously existing exception to the one final judgment rule in section 904.1 eliminated the common law rule entirely for section 904.2. Quite the opposite. Properly applied the above-quoted rule of statutory construction requires the conclusion that the Legislature's amendment of only section 904.1 reflects its intent that the common law exception for orders and judgments for monetary sanctions not involving discovery be limited only in unlimited civil cases.

We do not, in determining that the Legislature has not acted to alter the common law exception for monetary sanctions orders in limited civil cases, intend to suggest that such alteration would not be a good idea. On the contrary, the policy behind limiting a multiplicity of appeals of collateral monetary sanctions orders is just as strong in limited civil cases as it is in unlimited civil cases. This case provides a good example, as there would have been nine separately appealable sanctions orders to burden the appellate division of the trial court.

In addition, the difference in the rules for limited and unlimited civil appeals gives rise, at worst, to an inability to appeal certain monetary sanctions orders, and at best to a trap for the unwary. Many limited civil cases are originally filed as unlimited cases and are ultimately transferred. As reflected in *Estrada v. Ramirez* (1999) 71 Cal.App.4th 618, 621 [84 Cal.Rptr.2d 73], when a case is transferred from the unlimited civil court to the limited civil court, the case proceeds in the limited civil court as if it had always been filed there. A monetary sanctions order issued for less than $5,000 in the unlimited civil court prior to such a transfer would not be a separately appealable order. However, upon transfer to the limited court, the order would transmute into an appealable order. (*Ibid.*) If such an order was issued in the unlimited civil court in excess of the applicable 30- or 90-day time limit for filing an appeal in the appellate division of the trial courts, the right to appeal could arguably have been lost upon transfer. On the other hand, the order of the unlimited civil court could be deemed appealable as of the date the case is transferred to the limited civil court. In that case the applicable 30- or 90-day time limit would commence running immediately. In any case the right to await a final judgment in order to appeal an order for monetary sanctions would be lost. Not being faced with this issue, we do not reach any conclusion about how it might be resolved. For these reasons the Legislature might wish to reconsider the current state of the law in this area.

### B. *Fairness Requires That This Untimely Appeal Be Treated as a Writ Petition*

■ We have dismissed Drum's appeal because a timely notice of appeal is a prerequisite to appellate court jurisdiction. (*Hollister, supra,* 15 Cal.3d at pp. 666–667.) Ordinarily, under such circumstances a challenge cannot be "saved" by treating it as a petition for an extraordinary writ. (*Adoption of Alexander S.* (1988) 44 Cal.3d 857, 865 [245 Cal.Rptr. 1, 750 P.2d 778]; *Mauro B. v. Superior Court* (1991) 230 Cal.App.3d 949, 952–953 [281 Cal.Rptr. 507] (*Mauro B.*).) However, in unusual circumstances the Supreme Court has recognized the power of the appellate courts to treat a purported appeal as a petition for a writ of mandate. (*Olson v. Cory* (1983) 35 Cal.3d 390, 400–401[ 197 Cal.Rptr. 843, 673 P.2d 720]; *Mauro B.,* at pp. 953–954.)

The unusual circumstances recognized by the Supreme Court include those present here, to wit, an uncertainty in the law respecting appealability of the orders in question. (See *Phelan v. Superior Court* (1950) 35 Cal.2d 363, 371 [217 P.2d 951].) Because *Lim* is the only published authority on this issue, Drum's reliance on its holding and consequent failure to file timely appeals from the sanctions orders should be excused. (*Phelan*, at pp. 371–372.) To do otherwise would be unfair. Consequently, because the record before us contains the materials necessary to such a proceeding, we will construe Drum's untimely appeal to be a petition for writ of mandate.

Citing the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.; hereinafter DRA), Drum argues that the trial judge abused his discretion by failing to dismiss the case under the authority provided in that act "just so he could coerce Drum into dismissing the case himself, using increasing monetary sanctions as the cudgel to achieve his subjective desires." In essence, Drum asserts that since the purpose of the DRA is to dispose of cases quickly (*Moyal v. Lanphear* (1989) 208 Cal.App.3d 491, 497–498 [256 Cal.Rptr. 296]), the trial court was under some form of compulsion to dismiss the instant action, and that its failure to do so was an abuse of discretion.

■ However, as he himself points out, Government Code section 68608, subdivision (b) merely gives the trial court the power to sanction, including the power of dismissal, for failure to abide by DRA rules. It does not mandate such dismissals. Indeed, the Supreme Court has ruled that in cases such as this, where the sole responsibility for failure to comply with DRA rules is upon counsel, rather than upon the party, the trial court may not dismiss the action as a sanction, either as a matter of law or based upon public policy. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 471, 475–476, 478–480 [66 Cal.Rptr.2d 319, 940 P.2d 906] (*Garcia*); see also *Tliche v. Van Quathem* (1998) 66 Cal.App.4th 1054, 1061–1062 [78 Cal.Rptr.2d 458].) It does not matter, as Drum suggests, that it was the appellant in those cases complaining that the case had been dismissed. The purpose behind the rule is to protect an innocent client from the procedural mistakes of a negligent attorney. (*Garcia*, at p. 475.) Because Drum refused to appear in court or to dismiss the action himself, the trial court could only assume that the client, CCIC, was not at fault, and properly acted to protect it from counsel's incompetence for as long as it reasonably could.[4] Based upon the authority of *Garcia*, it could not simply dismiss the case as Drum suggests.

[4] At the time the trial court dismissed the action it had authority to do so, not under the local rules adopted pursuant to the DRA, but under the authority provided in sections 583.310 and 583.360, which mandate dismissal of a cause not brought to trial within five years of its commencement.

Drum also asserts as grounds for a reversal of the trial court's sanctions orders that the trial judge was biased against him. Citing *Solberg v. Superior Court* (1977) 19 Cal.3d 182, 193 and footnote 10 [137 Cal.Rptr. 460, 561 P.2d 1148], *Johnson v. Superior Court* (1958) 50 Cal.2d 693, 697 [329 P.2d 5], and *Flier v. Superior Court* (1994) 23 Cal.App.4th 165, 170 [28 Cal.Rptr.2d 383], Drum argues that it is not the existence of actual bias or prejudice that requires that a judge be disqualified, but merely the appearance of bias. He then asserts that the decisions of a trial judge who should have been disqualified are voidable. (*In re Christian J.* (1984) 155 Cal.App.3d 276, 280 [202 Cal.Rptr. 54].) Finally, he claims that the fact that the trial judge in this case continued to issue sanctions against him instead of simply dismissing the case demonstrates that he appeared to be biased against Drum such that his orders are void.

Interestingly, Drum does not suggest at what point the sanctions orders became so improper as to demonstrate bias. Surely any reasonable litigant would concede that sanctions were appropriate to some extent prior to implementation of the drastic and ultimate penalty of dismissal. Drum does not. More importantly, as we discussed *ante*, the trial court did not have the option of simply dismissing the case. Government Code section 68608, subdivision (b) encourages the use of sanctions in order to achieve the purposes of the DRA. However, as the Supreme Court held in *Garcia, supra*, 16 Cal.4th at page 475, the penalties available to the trial court in the case of attorney negligence are sharply limited. They include monetary sanctions payable to the court or to another party to the proceeding, as well as contempt, punishable by imprisonment. (*Id.* at pp. 480–481.)

Under the circumstances demonstrated by the record in this action, the trial court would have been well within its authority to hold Drum in contempt of court for his repeated refusal to acknowledge the express orders of the court to appear and explain his disrespectful behavior. Consequently, we do not find that a person aware of the facts of this case would reasonably entertain a doubt about the trial judge's impartiality because he chose the less severe penalty of escalating sanctions. Drum's mere conclusions to the contrary do not persuade us otherwise.

For these same reasons we are unconvinced by Drum's argument that the continued imposition of sanctions, which according to the record before us amount to $24,750 (not $4,000 as Drum suggests in his brief), when the initial sanctions remained unpaid was merely punitive and did not further the goals of the DRA and therefore constituted an abuse of discretion.

## DISPOSITION

The appeal is dismissed and is deemed a petition for a writ of mandate, which is denied.

McKinster, J., and Richli, J., concurred.

Petitioner's petition for review by the Supreme Court was denied August 2, 2006, S144881. George, C. J., did not participate therein.