Filed 10/28/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| KERI EVILSIZOR,<br>　　　Plaintiff,<br>v.<br>JOSEPH SWEENEY,<br>　　　Defendant and Respondent;<br>JOHN EVILSIZOR,<br>　　　Objector and Appellant. | A140059<br><br>(Contra Costa County<br>Super. Ct. No. MSD1301648) |

Respondent Joseph Sweeney issued a subpoena for bank records in the course of divorce proceedings with his wife, Keri Evilsizor. The subpoena sought records from his wife's accounts, but these records included financial information about her father. The father, appellant John Evilsizor,[1] moved to quash the subpoena, and Sweeney responded by agreeing to amend the subpoena to exclude information about John's account activities. John thereafter withdrew his motion to quash. But he did so belatedly, and the trial court sanctioned him by ordering him to pay a portion of the attorney fees Sweeney incurred in responding to the motion. On appeal, John argues that the court lacked a legal or factual basis for the award. We affirm and hold that a trial court may impose sanctions under Code of Civil Procedure section 1987.2[2] against a litigant for pursuing a motion to quash that, even though legitimately filed, was rendered unnecessary by a subsequent amendment or withdrawal of the subpoena.

---

[1] To avoid confusion between appellant and his daughter, who share the same surname, we will refer to them by their first names.

[2] All statutory references are to the Code of Civil Procedure unless otherwise specified.

# I.
## FACTUAL AND PROCEDURAL
### BACKGROUND

The proceedings to dissolve Sweeney and Keri's marriage began in April 2013.[3] Judging by the register of actions, the litigation has been contentious, with disputes arising over child custody and spousal support, and the trial court deeming it to be a "high conflict" case.[4]

During discovery, Keri produced documents showing she had a bank account with, and a credit card issued by, JP Morgan Chase Bank. On August 9, Sweeney issued a subpoena to Chase seeking records of those two accounts. Unbeknownst to Sweeney, John had an interest in the accounts, and some of his financial information was contained in the records. John claimed to have learned of the subpoena three days before Chase was to produce the requested records, although how he learned of it is unclear.

According to Sweeney, John made no attempt to meet and confer to explore limiting the scope of the subpoena. Instead, John filed a motion to quash on September 5 arguing he had been given insufficient notice of the subpoena. A hearing date of October 2 was set.

Sweeney's attorney apparently did not receive the motion to quash until September 9. The next day, the attorney wrote to John's counsel stating the subpoena would be amended to exclude John's private information. The letter demanded John to drop his motion "immediately" and warned that if the motion was not withdrawn by September 16, Sweeney would seek "attorney fees and Sanctions . . . for the unnecessary time spent in resolving this dispute without court intervention."

An amended subpoena was issued to Chase on September 12. It sought records related to the same accounts as the first subpoena, except it requested Chase to "exclude any deposits for sums payable or disbursements to/by John Evilsizor" on the bank

---

[3] All date references are to the 2013 calendar year unless otherwise specified.

[4] Also pending before this court are Sweeney's appeal of a May 6, 2014 domestic-violence restraining order against him (No. A142396) and Keri's appeal of a separate order (No. A143054).

2

account and to "exclude any charges made by John Evilsizor" on the credit-card account. John's attorney was served by mail with the amended subpoena on September 12. John's attorney wrote to Sweeney's attorney that same day. Although a copy of the letter is not in the appellate record, a response from Sweeney's attorney dated September 16 is. The response states Sweeney would seek sanctions for unnecessarily having to respond to the motion if John's motion to quash was not dropped "forthwith." It also states: "Please be advised that the original subpoena has been withdrawn. A one[-]minute phone call from your secretary to my Legal Assistant would have informed you of that event and saved your client the cost of the two page letter [of September 12]. Enclosed is our Amended Subpoena Deuces Tecum."

The parties characterize the timing of the correspondence up to this point differently. Sweeney points to the letter his attorney wrote on September 10 as showing he promptly tried to address the concerns raised in John's motion to quash. John points to the September 16 letter as showing this was the earliest notice he had that the first subpoena had been withdrawn.

In any event, Sweeney attested below that John's attorney wrote to Sweeney's attorney on September 17. According to Sweeney's declaration, in that letter John's attorney "acknowledged receipt of the Amended Subpoena but refused to drop John's motion unless the Amended Subpoena was *withdrawn*." (Original italics.) Again, however, no such letter appears in the record. Sweeney's attorney wrote to John's attorney on September 18 in response to a letter sent "earlier" that same day (i.e., not on September 17). This letter warned that if John did not "articulate a legal basis to proceed with a Motion to Quash after I have withdrawn the original subpoena and am proceeding under the Amended Subpoena, I will file a Response and seek attorney fees and sanctions per the Code." Sweeney's attorney asked for a response "before the end of business since my Response is due tomorrow" (i.e., on September 19).

On September 19, Sweeney filed a response to the motion to quash. In doing so, he focused solely on his demand for attorney fees incurred in responding to John's motion, without citing a statutory basis for such an award. He sought $4,450 for 10 hours

3

of legal work, and his attorney submitted a declaration setting forth his hourly rate and listing the tasks he performed responding to the motion to quash. Sweeney also filed a declaration describing the communication between the parties.

The law office representing John contacted the trial court on Friday, September 27, stating John withdrew his motion to quash. Sweeney's counsel wrote to the trial court that same day requesting that the scheduled hearing set for the following Wednesday, October 2, go forward to decide whether John should pay attorney fees under section 1987.2. John's attorney then wrote another letter that same day asking the trial court to take the motion off calendar because the original subpoena had been withdrawn, and John would likely need to address the amended subpoena in a separate motion to quash.

The October 2 hearing was not taken off calendar. At the hearing, the parties focused solely on whether Sweeney was entitled to attorney fees. His attorney argued that Sweeney was entitled to fees as the prevailing party "as required by the code." John's attorney argued that although section 1987.2 permits an award of attorney fees in responding to a motion to quash where such a motion is made in bad faith or without justification, that was not the case here because John sought in good faith to protect the disclosure of his private financial records. The attorney also explained that it "took awhile" to confirm with Chase that the bank would not produce the requested records because counsel was unfamiliar with the process, but he pointed out that John withdrew the motion to quash as soon as he confirmed the bank would not produce records.

The trial court agreed with John that "the actual initial Motion to Quash does not seem to have been in bad faith." The court was concerned, however, that there were "some issues . . . regarding the absolute need to even get to the point where further attorneys' fees were incurred for something that it just simply did not have to happen." John's attorney argued that an award of attorney fees under section 1987.2 is discretionary and that the original motion to quash was justified. He explained he did not receive confirmation that Chase would not produce John's financial information until after Sweeney filed his response to the motion to quash. And he stated the parties likely

4

could resolve issues related to the amended subpoena without the necessity of another motion to quash now that he knew more about the information sought.

Following further argument, the trial court ordered John to pay Sweeney $2,225 in attorney fees, half of what had been requested.[5] The court reiterated its belief that John's original motion to quash was not filed in bad faith, but it found that Sweeney's attorney "seemed to have gone to great lengths, basically, to try to avoid, number one, having to have this hearing, and number two, trying to address any concerns" about the underlying subpoena. The court focused on the timing, noting that John did not withdraw his motion until September 27 "after an interchange of correspondence that, I believe, began on September 10."

The court's written order, which was prepared by Sweeney's attorney, states that John's motion to quash was withdrawn and deemed moot, but that John shall pay $2,225 in attorney fees to Sweeney within 10 days. The order does not cite any statutory basis for the award. The order states the order is against "non-party John Evilsizor." According to the register of actions, John was added as a party to the case on November 18.

---

[5] John does not argue on appeal that the amount of the award was improper.

## II.
### DISCUSSION

*A. We Exercise Our Discretion to Consider John's Appeal.*

Sweeney argues this court lacks jurisdiction because John appealed from a nonappealable order. Section 904.1, subdivision (a)(11) provides that an appeal may be taken from "an interlocutory judgment directing payment of monetary sanctions by *a party* or an attorney for a party if the amount exceeds five thousand dollars ($5,000)." (Italics added.) For sanctions orders of $5,000 or less against a party or an attorney for the party, section 904.1, subdivision (b) provides that such orders "may be reviewed on an appeal *by that party* after entry of final judgment in the main action." (Italics added.)

Sweeney argues John must wait to appeal until after entry of a final judgment because he is currently a party to the action and the sanctions award was for less than $5,000 (§ 904.1, subd. (b)), whereas John argues the statute does not apply to him because he was not a party at the time he was sanctioned. Even though John was not a party at the time sanctions were ordered, the term "that party" in section 904.1, subdivision (b) generally refers to the party *against whom sanctions were imposed*, and not necessarily the party to the underlying action. (*Imuta v. Nakano* (1991) 233 Cal.App.3d 1570, 1585-1586 [attorney has separate right of appeal of sanctions order under § 1987.2 even though counsel is not officially a party to underlying proceedings].) This suggests the order was not appealable regardless whether John was a party at the time it was entered.

But we need not resolve whether the sanctions order was appealable because section 904.1, subdivision (b) grants this court discretion to review a sanctions order of less than $5,000 by extraordinary writ. "[T]he interests of justice . . . warrant resolving this fully briefed appeal—which [Sweeney] did not earlier move to dismiss—by treating it as a petition for extraordinary writ, as permitted by" section 904.1, subdivision (b). (*Eichenbaum v. Alon* (2003) 106 Cal.App.4th 967, 974.) We exercise our discretion under this authority to review the sanctions order.

*B. The Trial Court Permissibly Awarded Sanctions Based on John's Failure to Withdraw the Motion to Quash.*

John argues that the award was unauthorized under section 1987.2, subdivision (a) because Sweeney did not prevail on the underlying motion to quash. We are not persuaded.

The statute provides that in making an order on a motion to quash, "the court may in its discretion award the amount of the reasonable expenses incurred in . . . opposing the motion, including reasonable attorney's fees, if the court finds the motion was made . . . in bad faith or without substantial justification. . . ." The phrase "motion was made" is not defined in section 1987.2, but in general a motion is "deemed to have been made and to be pending before the court for all purposes, upon the due service and *filing* of the notice of motion." (§ 1005.5, italics added; see also *People v. Dianda* (1986) 178 Cal.App.3d 174, 177 [motion is " 'made' at the time of *service and filing of the motion*"], italics added.) But the *filing* of the motion to quash was not the problem here. The trial court agreed with John that the motion did not appear to have been filed in bad faith. And Sweeney apparently has never argued that the motion, as originally filed, lacked substantial justification, as he agreed to amend the subpoena in response to it.

By faulting John for not *withdrawing* the motion sooner, the trial court implicitly found that the statutory reference to when the "motion was made" may be interpreted broadly. We agree and conclude that pursuing a pending motion to quash after it becomes clear that it is unjustified may be considered "making" a motion under section 1987.2, subdivision (a). Such a conclusion is consistent with section 1005.5, which provides that once a motion is made it is considered "pending before the court for all purposes." We therefore reject John's argument that the trial court lacked legal authority to award fees under section 1987.2 because the original filing was not in bad faith or without substantial justification.

7

*C. The Trial Court Did Not Abuse Its Discretion in Awarding Attorney Fees.*

We therefore turn to consider whether the delay in withdrawing the motion was done "in bad faith *or* without substantial justification" (§ 1987.2, subd. (a), italics added), a question we review for an abuse of discretion. (*In re Marriage of Zimmerman* (2010) 183 Cal.App.4th 900, 914.) " 'A court's decision to impose a particular sanction is "subject to reversal only for manifest abuse exceeding the bounds of reason." ' " (*Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1435.) We find no manifest abuse in the trial court's ruling.

We first conclude that the record does not support a finding of bad faith. An award for sanctions based on bad faith generally requires a *subjective* element of bad faith. (*Abbett Electric Corp. v. Sullwold* (1987) 193 Cal.App.3d 708, 711-712 [sanctions under § 128.5].) John's attorney explained he had wanted to confirm with Chase that it would not produce his financial records before he withdrew his motion. Even if, as Sweeney contends on appeal, this was *objectively* unreasonable,[6] there is insufficient evidence in the record to support a finding of *subjective* bad faith.

---

[6] Sweeney claims that there was no chance the bank would produce records after John filed his motion. (See § 1985.3, subd. (g) [where a consumer has filed a motion to quash a subpoena, "[n]o witness or deposition officer shall be required to produce personal records after receipt of notice that the motion has been brought," except upon order of the court].)

But the record does support the trial court's finding that the delay was "without substantial justification." (§ 1987.2, subd. (a).)[7] "Substantial justification" means "that a justification is clearly reasonable because it is well grounded in both law and fact." (*Doe v. United States Swimming, Inc.*, *supra*, 200 Cal.App.4th at p. 1434.) "[W]hen an appeal is processed on a standard of abuse of discretion, the party aggrieved must be put on notice of the acts for which it was sanctioned in order to mount an effective review. Failure to delineate the grounds for exercise of discretion precludes meaningful review, a denial of due process." (*First City Properties, Inc. v. MacAdam*, *supra*, 49 Cal.App.4th at p. 516 [§ 1987.2 requires order giving rise to imposition of sanctions to state with particularity the basis for finding a violation of the statute].) "The trial court must set forth the factual basis for the award either in a formal order, a minute order, or in the reporter's transcript of the hearing on the motion." (*Boyle v. City of Redondo Beach* (1999) 70 Cal.App.4th 1109, 1120-1121 [award of attorney fees under Gov. Code, § 54960.5].)

At the hearing, the trial court explained in detail the basis for the award: "In this particular situation, the timing of everything [is] extremely important. As I've indicated, while the original Motion to Quash was not, I believe, done in bad faith, the subsequent actions taken when [Sweeney's attorney] made it very clear that he was attempting to cure this issue, having no previous knowledge that [John] was even these—were on these bank accounts, he seemed to have gone to great lengths, basically, to try to avoid, number

---

[7] We reject both parties' suggestion that it is unclear whether the trial court relied on section 1987.2 because the written order does not specify statutory grounds for the award. When Sweeney's counsel wrote to the trial court on September 27 asking to keep the motion to quash on calendar, he stated he would seek attorney fees under section 1987.2. And John's counsel acknowledged at the hearing the request for attorney fees was made under that statute; he simply argued it did not apply because the motion was made in good faith. The trial court then referred to the statute's bad-faith element. Because the reporter's transcript provides clarity on the statutory basis for the award of attorney fees, we need not address the parties' arguments on whether the award was appropriate on other possible grounds. (Cf. *First City Properties, Inc. v. MacAdam* (1996) 49 Cal.App.4th 507, 517 [where reporter's transcript and minute order did not reveal basis for award, trial court did not comply with due process].)

9

one, having to have this hearing, and number two, trying to address any concerns. [¶] The reality is, from the timing of it, I don't believe this department received any notice that there was even a request to drop the Motion to Quash until Friday September 27th after an interchange of correspondence that, I believe, began on September 10th." The court concluded by ruling "this was an unnecessary situation where there were attempts to cure an issue, that Mr. Sweeney and his counsel had no idea about that there was correspondence for a period of almost three weeks regarding how this could be addressed and that there was no need to have this Motion to Quash the subpoena. [¶] How it was not until Friday, September 27th, now just several days prior to this hearing, that there was even a request to drop the motion, and this is after the Responsive Declaration was filed on September 19th, I don't believe that this type of expenditure of resources was necessary. And that's why I'm including the sanctions."

This detailed statement by the trial court satisfied the court's duty to specify the reasons for imposing sanctions (*First City Properties, Inc. v. MacAdam*, *supra*, 49 Cal.App.4th at p. 516), and it makes clear the court found that John's delay in withdrawing the motion lacked substantial justification under section 1987.2. We recognize that some courts might have been more sympathetic than the trial court was to John's contention that he was justified in waiting to withdraw his motion until he confirmed with Chase that his financial information would not be disclosed. Our review of the parties' correspondence reveals Sweeney's attorney was not entirely blameless for the parties' uncivil relationship. It is true that in his September 10 letter he raised legitimate concerns about John's decision to file the motion to quash without trying to resolve the issue and promised to take prompt action to address John's concerns. But it is also true that he was quick to threaten sanctions and to complain about John's lack of cooperation and conciliation without always demonstrating those same qualities. In addition, while Sweeney has consistently stressed the burdens imposed upon him by having to respond on September 19 to the motion to quash, we question whether he could not have simply informed the trial court that he had amended the subpoena to exclude John's information rather than filing detailed declarations about the parties'

10

correspondence. And, of course, once John's law office wrote to the trial court asking that the motion to quash be taken off calendar, Sweeney could have simply dropped the matter altogether and guaranteed that additional fees would not be incurred.

But we are not free to substitute our discretion for that of the trial court so long as its ruling "was a reasonable exercise of its discretion." (*Avant! Corp. v. Superior Court* (2000) 79 Cal.App.4th 876, 881-882; see also *Walker v. Superior Court* (1991) 53 Cal.3d 257, 272 [reviewing court lacks authority to substitute its decision for that of trial court where lower court acts within bounds of reason].) The trial court did not abuse its discretion in awarding Sweeney attorney fees because it was not outside the bounds of reason to conclude that John was not justified in waiting to withdraw his motion to quash.

III.
DISPOSITION

The October 2, 2013, sanctions order is affirmed. The parties shall bear their own costs on appeal.

11

_____
Humes, P.J.

We concur:

_____
Dondero, J.

_____
Banke, J.

Trial Court:                          Contra Costa County Superior Court

Trial Judge:                          Honorable Barbara Hinton

Counsel for Appellant,                Schenone & Peck, Ronald G. Peck
John Evilsizor:

Counsel for Respondent,               Joseph Sweeney, in pro. per.
Joseph Sweeney: