Filed 2/17/22  Vision en Analisis y Estrategia v. Erwin Legal CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| VISIÓN EN ANÁLISIS Y ESTRATEGIA, S.A. DE C.V. et al.,<br><br>    Plaintiffs and Respondents,<br><br>        v.<br><br>ERWIN LEGAL, P.C. et al.,<br><br>    Defendants;<br><br>ALIR SETTLEMENTS, LLC et al.,<br><br>    Objectors and Appellants. | G059669<br><br>(Super. Ct. No. 30-2014-00756302)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Sherri L. Honer, Judge.  Affirmed.  Respondents' request for appellate attorney fees granted.

Beitchman & Zekian and David P. Beitchman for Objectors and Appellants.

Mayer Brown, Neil M. Soltman and C. Mitchell Hendy for Plaintiffs and Respondents.

*     *     *

The sole issue on appeal is the propriety of the trial court's $6,750 sanctions award under Code of Civil Procedure[1] section 1987.2 against several nonparties who objected to two postjudgment document subpoenas and then unsuccessfully opposed motions to compel compliance.  Finding no error, we affirm the sanctions order.  We also award respondents their appellate attorney fees in an amount to be determined by the trial court.

**FACTS**

As detailed in our prior opinion (*Visión en Análisis etc. et al. v. Erwin Legal, P.C. et al.* (Aug. 6, 2021, G058265, G058367, G058428) [nonpub. opn.]), the plaintiffs in this case are two foreign investment firms—Visión en Análisis y Estrategia, S.A. de C.V. and Capitaliza-T Sociedad de Responsabilidad Limitada de Capital Variable (collectively, Plaintiffs).  In 2011, Plaintiffs purchased an interest in a family trust that owned a $4 million universal life insurance policy insuring the life of an octogenarian. About a year later, Plaintiffs hired defendant Christopher Erwin—an attorney, life settlement broker, and a member of defendant Erwin Legal, PC—to help them sell that interest.

To broker the sale, Erwin needed to obtain information about the policy premiums and the insured's medical status so he could determine the policy's value. Neither Erwin nor Plaintiffs could obtain that information directly due to privacy rules, so Erwin asked his client and business contact, defendant David Mickelson Insurance

---

[1] All further undesignated statutory definitions are to this code.

2

Services (DMIS), which had been involved in underwriting and brokering a previous sale of the policy, to help him gather the necessary information. DMIS agreed to do so.

This case arose because neither Erwin nor DMIS advised Plaintiffs of an upcoming policy premium due date. As a result, Plaintiffs failed to pay the premium, which allowed the policy to lapse; Plaintiffs therefore lost their entire investment.

Plaintiffs sued Erwin, Erwin Legal, and DMIS (collectively, Defendants) for breach of contract, breach of fiduciary duty, and related claims. During discovery, it came to light that before the complaint was filed, Defendants had deleted all documents, including e-mails, related to their work for Plaintiffs.

After a lengthy jury trial, Plaintiffs obtained a multimillion-dollar judgment against Defendants in 2019. We affirmed that judgment in our previous opinion, finding no error in the trial court's jury instructions on inferences that may be drawn from a party's willful destruction of evidence; we also concluded substantial evidence supported the jury's verdict.

Plaintiffs' efforts to collect the judgment have been largely unsuccessful. At the time this appeal was briefed, Defendants had not made a single voluntary payment toward the judgment. With postjudgment interest accruing at over $1,000 per day, Defendants now reportedly owe Plaintiffs more than $4.3 million.

In an effort to identify Defendants' assets, Plaintiffs issued postjudgment subpoenas to a number of nonparty financial institutions and other entities. Two of those subpoenas—to TD Ameritrade, Inc. (Ameritrade) and Comerica Bank (Comerica)—are at issue in this appeal.

In the interest of brevity, we will not set forth every request made in those subpoenas here, but generally speaking, Plaintiffs asked Ameritrade and Comerica to produce records concerning any accounts and other assets in which Erwin, Erwin Legal, or DMIS have or had an interest. For example, the first request in the Ameritrade subpoena asked for "[a]ll DOCUMENTS constituting monthly statements for any and all

3

ACCOUNTS, wherever situated, in which Erwin Legal, PC, whose Federal Employer Identification Number ends in 5784, has or has had any INTEREST, including without limitation the ACCOUNT bearing an ACCOUNT number ending in 9565."

After receiving the subpoena, Ameritrade's Legal Process Department sent a one-page form letter to Linda Budd, who had worked for Erwin Legal for over a decade and who served as its secretary and chief financial officer. The letter, which enclosed a copy of Plaintiffs' subpoena, explained that Ameritrade had received the subpoena "regarding your account ending in 9556," and was forwarding that subpoena "as a courtesy"; Ameritrade indicated it was "required by law to comply with the subpoena and will be producing the requested information." (Contrary to the representations made under oath by Budd's attorney, Ameritrade's letter did not state Ameritrade "would produce Ms. Budd's confidential banking information.")

Comerica allegedly sent similar letters to Budd, as well as to ALIR Settlements, LLC (ALIR) and Alynmnt Dev I, Inc. (Alynmnt), two entities that may be owned or managed by Erwin. Those letters are not in the record, however.

Budd, ALIR, and Alynmnt (collectively, Appellants) all retained Erwin's attorney, David P. Beitchman of Beitchman & Zekian, to represent them in connection with the subpoenas. Beitchman served blanket objections to the subpoenas on Appellants' behalf, asserting Appellants' financial privacy rights and the privacy rights of unspecified third parties.

Plaintiffs attempted to meet and confer with Beitchman about Appellants' objections. During the meet and confer efforts, Beitchman explained that Appellants did not object to the production of any documents concerning *Defendants*; they only objected to the production of documents containing Appellants' private information. As best we can tell from the record, Beitchman never explained why Appellants believed the subpoenas sought such records (aside from the fact that Ameritrade and Comerica had notified Appellants about the subpoenas).

4

After meet and confer efforts proved unsuccessful, Plaintiffs moved to compel responses from Ameritrade and Comerica under sections 1987.1 and 1985.3.[2] They also sought over $44,000 in sanctions against Appellants and their counsel pursuant to section 1987.2 for objecting to the subpoenas and for their anticipated oppositions to the motions, which Plaintiffs asserted were made in bad faith or without substantial justification.[3] Appellants, as anticipated, opposed the motions.

At the hearing on the motions, the trial court said it was inclined to grant the motions to compel because Appellants were not mentioned in the subpoenas, and it was "not clear" how the subpoenas impacted Appellants or their privacy rights. When the court asked Appellants' counsel to explain which requests in the Ameritrade subpoena affected Budd and how, Appellants' counsel conceded there was no specific request that affected Budd, but claimed Ameritrade had "indicated to Ms. Budd [in its letter] that they're going to be producing her confidential information." The court replied that Ameritrade's letter to Budd said no such thing, and further noted that Appellants had not explained what financial information of Budd's would be subject to disclosure. The court then granted the motion to compel on the Ameritrade subpoena in full, granted the motion to compel on the Comerica subpoena in part,[4] and awarded $6,750 in sanctions against Appellants under section 1987.2. Appellants filed a notice of appeal.

---

[2] Section 1987.1 authorizes a party to move for an order directing compliance with a records subpoena. Section 1985.3, subdivision (g), authorizes the party requesting a consumer's personal records to file a motion under section 1987.1 to enforce the subpoena.

[3] Section 1987.2, subdivision (a), grants trial courts the discretion to "award the amount of the reasonable expenses incurred in making . . . [a] motion [under section 1987.1], including reasonable attorney's fees, if the court finds the motion was . . . opposed in bad faith or without substantial justification."

[4] The Comerica subpoena requested the production of certain documents pertaining to the "OCEL Trust." The trial court did not order Comerica to respond to

## DISCUSSION

1.    *The Section 1987.2 Award*

As noted, the sole issue before us is the propriety of the trial court's $6,750 sanctions award against Appellants.  The court made the award under section 1987.2, subdivision (a), which permits courts to award "reasonable expenses incurred in making [a] motion [to compel compliance with a records subpoena], including attorney's fees, if the court finds the motion was . . . opposed in bad faith or without substantial justification."

The parties agree we review a sanctions award under section 1987.2 for abuse of discretion.  (See *Evilsizor v. Sweeney* (2014) 230 Cal.App.4th 1304, 1311.)  Appellants assert the trial court abused its discretion in awarding sanctions because the subpoenas violated Appellants' constitutional right of privacy and because there is no evidence they acted in bad faith or without substantial justification.  We cannot agree.

The subpoenas at issue expressly sought information regarding Defendants; neither subpoena mentioned Appellants; neither subpoena seemed to request the production of any records related to Appellants.  Appellants' right of privacy does not extend to records concerning Defendants, the judgment debtors, and thus does not justify Appellants' objections and oppositions.

Further, Appellants failed to demonstrate that they had any factual basis for asserting Appellants' information would be produced in response to the subject subpoenas.  Nonetheless, they insist the Ameritrade and Comerica letters to them reflect that Appellants' private information was subject to production.  Not so.  Ameritrade's letter to Budd simply stated Ameritrade would comply with the subpoena; it did not state, contrary to the representations made under oath by Appellants' attorney in his opposition to Plaintiffs' motion to compel, that Ameritrade "would produce Ms. Budd's confidential

those particular requests, so we will not discuss them further here.

6

banking information" or anything to that effect.[5] Comerica's alleged letters to Appellants are not in the record, so we have no basis to conclude those letters gave Appellants any reasonable cause to believe their information would be subject to production.

When questioned about the propriety of sanctions at the hearing on the motions, Appellants' counsel insisted "we had justification to at least draft these preliminary objections." Perhaps that is so. But even if the letters from Ameritrade and Comerica caused some initial concern or confusion about Appellants' information being subject to production so as to warrant objections, Appellants' insistence on maintaining those objections throughout motion practice, without any factual support, was unreasonable. The trial court therefore correctly concluded Appellants' opposition to the motions to compel lacked substantial justification. (See § 1987.2, subd. (a).)

Appellants alternatively argue we must reverse the sanctions award because the trial court failed to set forth the factual basis for the award. (See *First City Properties, Inc. v. MacAdam* (1996) 49 Cal.App.4th 507, 516 [trial court must provide detailed recitation of conduct or circumstances justifying sanctions order under § 1987.2].) The record belies this argument. Although the court's minute order and formal signed order on the motions to compel were brief, the reporter's transcript from the hearing unambiguously demonstrates why the court granted the motions to compel and awarded sanctions. The sanctions order is affirmed.

2.    *Appellate Attorney Fees*

Plaintiffs ask us to award them their appellate attorney fees under section 1987.2, noting that "'[a] statute authorizing an attorney fee award at the trial court level includes appellate attorney fees unless the statute specifically provides otherwise.'" (*Roe*

---

[5]    A reasonable explanation for Ameritrade sending the letter to Budd is the fact that Budd was Erwin Legal's chief financial officer; it would therefore not be surprising if she was listed as a point of contact on one or more of Erwin Legal's accounts.

*v. Halbig* (2018) 29 Cal.App.5th 286, 313 [awarding appellate attorney fees to nonparty who filed motion to quash subpoena, obtained sanctions under § 1987.2, subd. (c) in the trial court, and prevailed on appeal].) Section 1987.2, subdivision (a), which authorizes awards of "reasonable expenses . . . , including reasonably attorney's fees" at the trial court level, does not foreclose appellate attorney fees. Therefore, Plaintiffs are entitled to their appellate attorney fees. The trial court shall determine appellate fees and costs in the first instance.

## DISPOSITION

The order is affirmed. Plaintiffs shall recover their attorney fees and costs on appeal, in amounts to be determined by the trial court. (Cal. Rules of Court, rule 8.278(a)(1).)



GOETHALS, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.

8