Filed 10/12/22  Vista Charters v. Airmotive Specialties CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| VISTA CHARTERS, LLC et al., | H049284 |
| Plaintiffs and Appellants, | (Monterey County<br>Super. Ct. No. 20CV000952) |
| v. | |
| AIRMOTIVE SPECIALTIES, INC. et al., | |
| Defendants and Respondents. | |

Plaintiffs Gary Thomas and Vista Charters, LLC (together, Vista) brought an action against defendants Airmotive Specialties, Inc., David Teeters, and Maricela Teeters (collectively, Airmotive) for fraudulent billing over the restoration of a vintage World War II aircraft.  Vista appeals from a pretrial order imposing a monetary sanction of $6,180 against it for misuse of the discovery process in connection with subpoenas issued by Vista to financial institutions used by Airmotive.

Vista asserts that the trial court erred in imposing the monetary sanction and in curtailing its discovery of information critical to the development of its claims against Airmotive.  Vista argues that this court's appellate jurisdiction to review the pretrial order imposing a monetary sanction over $5,000 (Code Civ. Proc., § 904.1, subd. (a)(12))[1]

---

[1] Unspecified statutory references are to the Code of Civil Procedure.

encompasses the trial court's rulings on the related discovery orders. Vista contends the propriety of the sanction cannot be determined without examining the merits of those rulings.

We address Vista's arguments challenging the discovery orders only to the extent necessary to determine whether the trial court erred in imposing the sanction. For the reasons explained below, we affirm the order.

## I. FACTS AND PROCEDURAL BACKGROUND

In March 2020, Vista sued Airmotive, asserting fraud, breach of contract, and related claims arising from Airmotive's restoration of a vintage World War II Mustang P51 aircraft owned by Vista and referred to by the parties as "Sonny Boy."

According to the allegations in the complaint, Airmotive specializes in the restoration of vintage aircraft. In September 2011, Airmotive told Vista that it would take approximately 4,305 hours and cost $590,904 to complete the restoration of the aircraft to " 'flight state.' " Airmotive promised to complete the restoration project in a reasonable amount of time and for the amount quoted, unless justifiable, previously unforeseen conditions required more work. In fact, Airmotive took over six years to complete the project and billed Vista $2,263,340.57 for 22,550 hours of work, offering no explanation for the cost overrun or additional hours.

Vista alleged that Airmotive did not provide the requested documentation or records of its work, and as a result Vista could not ascertain "whether there was a fraudulent representation at the inception, or fraudulent billing." Airmotive responded by generally denying the complaint allegations and filing a cross-complaint.

In September 2020, Vista issued deposition subpoenas for production of business records (subpoenas) to Pacific Coast Bankers' Bank and Pinnacle Bank (hereafter, banks). The subpoenas listed 34 categories of requested documents pertaining to Airmotive's financial, accounting, payroll, and employment records for the time period covering the restoration work on Sonny Boy, from approximately 2009 through 2018.

2

The records identified in the subpoenas were not limited to those for the Sonny Boy restoration project but also extended to work performed by Airmotive on other P51 Mustang aircraft for other customers.

For example, the subpoenas sought documents identifying all employees or non-employees (i.e., independent contractors) of Airmotive who worked on Sonny Boy, or other aircraft restoration projects, during any time between January 1, 2009, and April 1, 2018, last known contact information (including addresses and phone numbers), and employment status; "[a]ll documents regarding payment to workers, including but not limited to" annual and quarterly tax forms prepared and filed by Airmotive from January 1, 2009 through April 1, 2018, for each Airmotive employee and non-employee assigned to work on the Sonny Boy restoration project "or any other" aircraft during that time; all financial documents of Airmotive from April 1, 2009 to March 31, 2018; and tax records of Airmotive, including federal and state tax returns, from January 1, 2009 to present. (Capitalization omitted.)

Airmotive responded by moving for an order to quash the bank subpoenas and for monetary sanctions (motion to quash). In support of the motion to quash, Airmotive filed declarations of defendant David Teeters (Teeters), the principal shareholder and chief executive officer of Airmotive, and that of Airmotive's counsel, Craig Cox. Airmotive asserted the subpoenas did not comply with sections 1985.3 and 1985.6,[2] sought "irrelevant, confidential, private, and privileged information" of Airmotive, its employees and clients, as well as information outside the scope of what the banks "could reasonably be expected to have in their possession." Airmotive argued that, due to their breadth, the subpoenas appeared calculated to harass Airmotive and disrupt its business relations.

---

[2] Where a subpoena seeks " '[p]ersonal records' " of a consumer, including records maintained by a bank, section 1985.3 requires the subpoenaing party to notify the consumer of the records sought. (§ 1985.3, subds. (a)(1), (b), (e).) Section 1985.6 imposes similar notice requirements for employees where the subpoena seeks employment records. (§ 1985.6, subds. (b), (e).)

Vista opposed the motion to quash. It maintained that it had hired a certified forensic examiner who requested the identified records as the "best proof" to audit Airmotive's statements to determine the accuracy of Airmotive's invoices, which exceeded the estimated cost of the project by 500 percent. Vista submitted lengthy declarations of Vista's principal, plaintiff Gary Thomas (Thomas), and Vista's counsel, Robert Vantress (Vantress), describing the relevance and necessity of the records to prove Vista's fraud claim.

Airmotive filed a reply in support of its motion to quash and objected to the Thomas and Vantress declarations.

In addition to the bank subpoenas, Vista also propounded written discovery on Airmotive. Its first request for production of documents consisted of 177 requests. The requests for production sought categories of financial records similar to those Vista had requested from the banks. In addition, the requests sought records related to labor, time, expense records documenting Airmotive's estimates, delays, and any changes in project scope, insurance policy records, and communication and project management documents, including regulatory inspections.

Airmotive filed a response to the requests for production in which it agreed to produce certain categories of documents pertaining to the Sonny Boy project. However, Airmotive objected to the other categories. In light of Airmotive's objections, Vista moved to compel further responses to the requests for production, supported by a separate statement (Cal. Rules of Court, rule 3.1345) and the declarations of Vantress and Thomas (motion to compel).

In May 2021, the trial court held a hearing on both motions and issued separate, written orders on each.

Regarding Airmotive's motion to quash the bank subpoenas and request for sanctions, the trial court found the 34 categories in each subpoena were "unacceptably overbroad because the combined effect would entail discovery of all financial

4

transactions and private financial information for [Airmotive] and others." The court granted the motion to quash and ordered the subpoenas modified to require responses in seven categories, limited to documents related to the Sonny Boy restoration project. The court further granted the request for sanctions against Vista and/or its counsel, Vantress, and imposed a monetary sanction in the amount of $6,180.

Regarding Vista's motion to compel, the trial court characterized as "remarkable" the "overbreadth of the requests [for production] and privacy invasion" and found that Vista had failed to meet its burden of stating facts to support good cause to justify the production of further documents for all 177 requests. Nevertheless, because the court also found that Airmotive's response to the requests for production failed to satisfy its discovery obligations under section 2031.230, it ordered Airmotive to provide a verified, supplemental response for each category in which it had asserted an inability to comply. The court denied the balance of the motion to compel and declined to impose sanctions, noting that while Airmotive's responses were "not Code-Compliant," Vista's discovery requests were "grossly overbroad and oppressive."

Vista timely filed a notice of appeal of the order on the motion to quash.

## II.  DISCUSSION

On appeal, Vista asserts multiple claims of error. It contends that by quashing all but seven categories of requests in the subpoenas to the banks and by limiting Airmotive's obligation to respond to Vista's requests for production, the trial court misapplied the law governing discovery of financial records, abused its discretion, and crippled Vista's ability to obtain the information necessary to support its claim for fraudulent billing.

Airmotive counters that, given the procedural posture of this matter, this court's appellate jurisdiction is limited to the sanction order. Further, Airmotive maintains that the trial court correctly ruled on the motion to quash and motion to compel, because Vista

5

is not entitled to financial records, tax records, records related to work performed on other aircraft, or to Airmotive's cost records.

We agree that our jurisdiction in this appeal is limited to the sanction order. We address the trial court's discovery rulings only to the extent required to resolve the issue properly before us.

### A. Appellate Jurisdiction

The existence of an appealable judgment or order "is a jurisdictional prerequisite to an appeal." (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126.) Reviewing courts must resolve any doubts regarding appealability before turning to the merits of the appeal (*ibid*.) and must dismiss an appeal taken from a nonappealable order. (*Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1432 (*Doe*).) We independently review our jurisdiction. (*Kirk v. Ratner* (2022) 74 Cal.App.5th 1052, 1060, citing *California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231, 252.)

"A trial court's order is appealable when it is made so by statute." (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696.) Section 904.1, subdivision (a)(12) provides that an appeal may be taken from "an order directing payment of monetary sanctions by a party or an attorney for a party if the amount exceeds five thousand dollars ($5,000)." (§ 904.1, subd. (a)(12).) While an order directing the payment of monetary sanctions exceeding $5,000 is directly appealable (*ibid*.), there is no comparable statutory right to appeal a prejudgment discovery order such as the orders at issue here. (See *Doe*, *supra*, 200 Cal.App.4th at p. 1432; *Macaluso v. Superior Court* (2013) 219 Cal.App.4th 1042, 1049.) Nevertheless, a nonappealable decision on a discovery matter can be reviewed in conjunction with an appealable order if it "necessarily affects the . . . order appealed from." (§ 906.) It is therefore appropriate to consider the merits of a nonappealable substantive ruling on a discovery matter if that ruling is "inextricably intertwined" with an appealable order directing payment of monetary sanctions. (*Mileikowsky v. Tenet Healthsystem* (2005) 128 Cal.App.4th 262, 276 (*Mileikowsky*).)

6

In *Mileikowsky*, the appellant sought review of an order which granted a request for terminating sanctions, as well as $8,500 in monetary sanctions against the appellant based on his repeated failure to provide discovery in the trial court. (*Mileikowsky*, *supra*, 128 Cal.App.4th at pp. 264, 273–275.) In defining the scope of its review, the Court of Appeal explained that while it had "attempted to limit [its] review to issues pertaining to the monetary sanctions awarded," its "reasoning necessarily encompasse[d] the propriety of granting terminating sanctions" (*id*. at p. 264) and thus required it to review the merits of the motion for terminating sanctions. (*Id*. at p. 276.)

In *Doe*, by contrast, the defendant United States Swimming appealed from an order directing it to pay monetary sanctions in the amount of $5,250 to the plaintiff, Jane Doe, after the trial court found that United States Swimming, without substantial justification, failed to comply with an earlier discovery order and opposed the plaintiff's motion to compel compliance with that order. (*Doe*, *supra*, 200 Cal.App.4th at p. 1427.) Doe sought partial dismissal of the appeal insofar as it concerned the nonappealable provisions of the discovery order (*id*. at p. 1432), which directed United States Swimming to produce documents regarding claims of sexual harassment or abuse by its coaches and to limit redactions to specific, identifying information. (*Id*. at pp. 1427–1430.) This court declined to dismiss the appeal but limited its review to "that portion of the [discovery] order imposing a monetary sanction of over $5,000." (*Id*. at p. 1433.)

The *Doe* court rejected United States Swimming's assertion that, like in *Mileikowsky*, the appeal implicated the entire discovery order because the sanction order was "inextricably intertwined with the other issues decided by the superior court." (*Doe*, *supra*, 200 Cal.App.4th at p. 1433.) Instead, this court noted that "issues unrelated to the propriety of the monetary sanction [were] not cognizable." (*Ibid*.) The propriety of the sanctions order turned on whether United States Swimming had reasonably interpreted the trial court's prior discovery and protective orders and " 'acted with *substantial justification*' " in opposing the motion to compel and producing extensively redacted

7

discovery responses. (*Id*. at p. 1434, quoting § 2023.030, subd. (a).) Because the propriety of the sanctions award (based on United States Swimming's conduct) was distinct from the merits issue underlying the motion to compel (which pertained to third party privacy rights), this court limited the scope of appellate review to the sanctions order. (*Doe*, at pp. 1439–1440.)

Vista acknowledges that this court's review is of the sanction order. Nevertheless, Vista compares the circumstances here to *Mileikowsky* and claims that the merits of both discovery orders are properly before this court because we cannot determine the propriety of the sanction order without examining the subpoenas and motion to quash.

We agree with Vista in part. The trial court based its sanction order on the finding that the subpoenas' 34 categories of requests were "unacceptably overbroad," the subpoenas were "oppressive," and Vista's opposition was inadequate to provide "facts showing substantial justification for the grossly overbroad subpoenas." Our review of the sanction order necessarily implicates the underlying bank subpoenas, specifically with respect to whether the trial court erred in determining the requests to be "oppressive" and justifying the imposition of a monetary sanction in conjunction with the motion to quash. (See § 1987.2, subd. (a).)

In contrast with *Doe*, where appellate review of the sanctions order required examination of a party's tactics and reasoning but did not require the court to decide whether the resulting order compelling compliance was an abuse of discretion, in this case the propriety of the sanction order is tied to the asserted impropriety (i.e., overbreadth or oppressiveness) of the bank subpoenas. (Cf. *Doe*, *supra*, 200 Cal.App.4th at p. 1433.) Although Airmotive asserts the "issues of the monetary sanction and the granting of [its] motion to quash are separate and distinct as opposed to intertwined," its argument necessarily relies on the trial court's finding that the subpoena requests were unacceptably overbroad. (Underlining omitted.) Consequently, to the extent that any

8

review of the sanction order necessitates consideration of the trial court's determination that the subpoenas were overbroad and oppressive, we review the issues jointly.

We do not, however, adopt Vista's view regarding the "companion order" on the motion to compel. The trial court did not impose a monetary sanction in connection with the motion to compel and, unlike the order on the motion to quash, no part of the order on the motion to compel is directly appealable. (See *Doe*, *supra*, 200 Cal.App.4th at p. 1432.) While the categories of discovery at issue in the subpoenas and those set forth in the requests for production overlap, the trial court's ruling on the motion to compel has no bearing on the sanction order. As such, this court's power to review an order or decision that "involves the merits or necessarily affects the . . . order appealed from" (§ 906) does not extend to the trial court's order on the motion to compel, and appellate review of that order at this juncture is not cognizable.

*B.  Standard of Review*

In their briefing, the parties disagree on the appropriate standard of review.[3] Vista argues this court should review de novo the trial court's sanction order and its discovery rulings. Citing *St. Mary v. Superior Court* (2014) 223 Cal.App.4th 762, 773 (*St. Mary*), Vista asserts that although an appellate court ordinarily reviews decisions on discovery matters for abuse of discretion, where the evidence supporting the need for discovery is undisputed, the court may review the trial court's exercise of discretion as a question of law. Airmotive maintains that abuse of discretion constitutes the appropriate standard and Vista's reliance on the purportedly "undisputed" facts supporting the subpoenas is misplaced and does not entitle Vista to discover Airmotive's financial and tax records or confidential employee or trade secret information.

We disagree with Vista's characterization of the facts relevant to the subpoenas and sanction order as "undisputed." While there is no dispute about the language of the

_____

[3] At oral argument, counsel for Vista agreed that the appropriate standard of review of the sanction order is abuse of discretion.

subpoenas or facts asserted by each side in support and in opposition to the motion to quash, both parties challenge the nature and adequacy of the evidentiary support presented to the trial court. In assessing these motions, the trial court had to weigh and evaluate the evidence and competing declarations submitted on each side. The trial court's resolution of the underlying motion and decision whether to impose sanctions entailed more than the application of law to undisputed facts. (*Cornerstone Realty Advisors, LLC v. Summit Healthcare Reit, Inc.* (2020) 56 Cal.App.5th 771, 789 (*Cornerstone Realty*); see *Obregon v. Superior Court* (1998) 67 Cal.App.4th 424, 431 *Obregon*) [explaining that even when the facts related to the discovery dispute appear uncontested, the trial judge's resolution of the dispute inevitably involves a factual component, "derived from the trial judge's knowledge of the case"].)

The trial court's inquiry—and nature of our review on appeal—contrasts with cases where the propriety of the discovery sanction centered on a pure question of law. For example, in *Toshiba America Electronic Components v. Superior Court* (2004) 124 Cal.App.4th 762 (*Toshiba*), the propriety of the sanction hinged on whether a provision of the Civil Discovery Act mandated cost-shifting or merely permitted the trial court to shift costs when the discovery demand required costly information recovery from digital sources. (*Id.* at p. 768; see also *Roe v. Halbig* (2018) 29 Cal.App.5th 286.) We therefore review the sanction order for abuse of discretion.

A trial court has broad discretion in deciding whether to impose a discovery sanction and in setting the amount of a monetary sanction. (*Cornerstone Realty*, *supra*, 56 Cal.App.5th at p. 789; *Rutledge v. Hewlett-Packard Co.* (2015) 238 Cal.App.4th 1164, 1191; *Doe*, *supra*, 200 Cal.App.4th at p. 1435; *Evilsizor v. Sweeney* (2014) 230 Cal.App.4th 1304, 1311; *Sinaiko Healthcare Consulting, Inc. v. Pacific Healthcare Consultants* (2007) 148 Cal.App.4th 390, 401.) While the abuse of discretion standard is founded on principles of deference to the trial court, it "should not be read as permitting an appellate court to reverse a trial court based upon abuse of discretion only if 'its action

was utterly irrational.' " (*St. Mary*, *supra*, 223 Cal.App.4th at p. 773.)  A trial court's exercise of discretion " 'is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown.' " (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.)  Thus, "a discretionary order based on an application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion and is subject to reversal." (*Farmers Ins. Exchange v. Superior Court* (2013) 218 Cal.App.4th 96, 106; see also *Toshiba*, *supra*, 124 Cal.App.4th at p. 768.)

The California Supreme Court expounded on the application of these principles in a dispute concerning the appropriate scope of discovery in a putative wage and hour class action. (*Williams v. Superior Court* (2017) 3 Cal.5th 531 (*Williams*).)  Our high court explained that deference to the trial court's broad discretion in matters of discovery "comes with two related caveats." (*Id*. at p. 540.)  First, as set forth above, "[a]n order that implicitly or explicitly rests on an erroneous reading of the law necessarily is an abuse of discretion." (*Ibid*.)  Second, given the broad discretion vested in trial courts by the statutory scheme governing discovery, "trial courts issuing discovery orders and appellate courts reviewing those orders should do so with the prodiscovery policies of the statutory scheme firmly in mind." (*Ibid*.)  The high court cautioned that a reviewing court "may not use the abuse of discretion standard to shield discovery orders that fall short:  'Any record which indicates a failure to give adequate consideration to these concepts is subject to the attack of abuse of discretion, regardless of the fact that the order shows no such abuse on its face.' " (*Ibid*.)

Bearing in mind these principles, we turn to the sanction order.

*C.  Analysis*

Vista issued the bank subpoenas pursuant to the Civil Discovery Act (§ 2016 et seq. (Act).  The Act governs both party and nonparty discovery and authorizes the imposition of sanctions for noncompliance and discovery abuses.  The Act specifies the

11

process for obtaining discovery from a nonparty within the state through the production of business records, such as the subpoenas at issue here.  (See §§ 2020.010, 2020.020.)

When a subpoena is issued, a trial court has broad authority pursuant to section 1987.1 to "make an order quashing the subpoena entirely, modifying it, or directing compliance with it upon those terms or conditions as the court shall declare, including protective orders."  (§ 1987.1.)  Further, "the court may in its discretion award the amount of the reasonable expenses incurred in making or opposing the motion, including reasonable attorney's fees, if the court finds the motion was made or opposed in bad faith or without substantial justification or that one or more of the requirements of the subpoena was oppressive."  (§ 1987.2, subd. (a); see also §§ 2023.010, 2023.030 [listing misuses of the discovery process and authorizing sanctions under the Act].)

In its order partially granting the motion to quash, modifying the subpoenas, and imposing a monetary sanction, the trial court found the bank subpoena categories "unacceptably overbroad because the combined effect [of the requests] would entail discovery of all financial transactions and private financial information for [Airmotive] and others."  The court noted that the subpoenas sought financial documents for "ten other aircraft projects" apart from Sonny Boy, which suggested "a majority of the documents sought d[id] not relate to the subject project."  Additionally, the court found that Vista was not "claiming any ownership interest in Airmotive Specialties, Inc. to justify obtaining 9 years['] worth of documents regarding the operations of the business."  Citing case authority that discovery requests which "are grossly overbroad on their face, and hence do not appear reasonably related to a legitimate discovery need" support "a reasonable inference . . . of an intent to harass and improperly burden" (*Obregon*, *supra*, 67 Cal.App.4th at p. 431), the court deemed the subpoenas "oppressive" and Vista's opposition inadequate to provide "facts showing substantial justification for the grossly overbroad subpoenas."

12

Vista contends that the trial court's imposition of a monetary sanction was error because the subpoenas were lawful and not oppressive. Vista maintains its opposition to the motion to quash was substantially justified by the need for the billing and accounting records identified in the 34 selected subpoena categories. Vista asserts that the justification for each category of documents as set forth in the Vantress and Thomas declarations was "unrebutted," yet the trial court denied most of the discovery sought. It also argues that the trial court "entirely misunderstood the scope of the subpoenas." It relies particularly on the attestations of Vantress and Thomas concerning Vista's retained forensic accountant who, according to the declarations in opposition to the motion to quash, advised that the records sought were critical to carry out a competent audit of Airmotive's financial records, investigate the issues raised by the complaint, and determine whether Airmotive engaged in fraudulent billing or otherwise doctored or inflated charges, costs and expenses, or time entries.

Airmotive responds that the sanction award was proper pursuant to section 1987.2, because under the plain language of the statute, the court may award costs and attorney fees if *any* part of the subpoena is oppressive. Airmotive asserts that even without considering the other categories of requests, the requests for financial records and tax returns were oppressive and the trial court well was within its discretion in so finding. It points out that the objections Airmotive asserted in response to the subpoenas validly claimed the requested information impinged upon and was "unduly intrusive of the rights to privacy" under the state constitution and pertinent statutory law.

We agree with Vista that "a civil litigant's right to discovery is broad." (*Williams*, *supra*, 3 Cal.5th at p. 541.) Under the Act, "any party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action . . . if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence." (§ 2017.010.) The California Supreme Court in *Williams* explained that "[s]ection 2017.010 and other

13

statutes governing discovery 'must be construed liberally in favor of disclosure unless the request is clearly improper by virtue of well-established causes for denial.' [Citation.] This means that 'disclosure is a matter of right unless statutory or public policy considerations clearly prohibit it.' " (*Williams*, at p. 541.) Furthermore, "[u]nder the Legislature's 'very liberal and flexible standard of relevancy,' any 'doubts as to relevance should generally be resolved in favor of permitting discovery.' " (*Id.* at p. 542.)

But the scope of discovery, though broad, " 'is not limitless.' " (*Board of Registered Nursing v. Superior Court* (2021) 59 Cal.App.5th 1011, 1039 (*Board of Registered Nursing*).) Information that is otherwise discoverable "may be protected by a constitutional or statutory privilege." (*Ibid.*) We are also cognizant that the order imposing a sanction in this matter arose from a discovery demand on a third party—much of which was duplicative of discovery propounded on Airmotive itself. "The discovery methods available against nonparties are more limited, and their procedures more streamlined. . . . ' "The distinction between parties and nonparties reflects the notion that, by engaging in litigation, the parties should be subject to the full panoply of discovery devices, *while nonparty witnesses should be somewhat protected from the burdensome demands of litigation*." ' " (*Id.* at p. 1033, quoting *Monarch Healthcare v. Superior Court* (2000) 78 Cal.App.4th 1282, 1290.)

Thus, in considering whether the trial court abused its discretion in finding the subpoenas were overbroad and oppressive and thus warranted imposition of a monetary sanction, we bear in mind "the more limited scope of discovery available from nonparties." (*Board of Registered Nursing*, *supra*, 59 Cal.App.5th at p. 1039; accord *Catholic Mutual Relief Society v. Superior Court* (2007) 42 Cal.4th 358, 366, fn. 6.) We also recognize that one of the trial judge's critical roles in presiding over discovery is to evaluate the breadth and burden created by the request on the responding party (or, here, nonparty) against the legitimate discovery need of the propounding party and relevance of the sought-after material. (See *Obregon*, *supra*, 67 Cal.App.4th at pp. 430–431.)

14

Having reviewed in detail the underlying discovery dispute, including the subpoenas to the banks, the evidence and arguments submitted in support of and in opposition to the motion to quash, and the trial court's rulings on the motion to quash and for sanctions, we conclude that the trial court did not abuse its discretion in imposing a sanction. The record supports the trial court's determination that the subpoenas were overbroad and oppressive with respect to the scope of financial information sought.

Broadly speaking, the trial court quashed those subpoena categories pertaining to financial records and tax records of Airmotive (including account statements; financing statements; leases, loans, and equipment purchases; state and federal tax returns; tax filings for employees and non-employees; income statements, cash flow, and balance sheets; documents reflecting compensation or transfers of value to David and/or Maricela Teeters) as well as records related to Airmotive's work on other aircraft (such as invoices to other customers; draft invoices, notes, and cost computations for other projects, including parts fabricated; cost estimates and work plans for other projects; documents reflecting any terminated restoration projects or aircraft removed before project completion). But the court retained those subpoena requests requiring the banks to produce records pertaining to communications with employees or nonemployees of the banks related to the Sonny Boy project, payroll reports for labor performed on Sonny Boy, documents identifying or listing employees or nonemployees who worked on Sonny Boy, and documents related to costs, budgets, invoices, employee time records, materials, and expenses incurred for each part fabricated for use in the Sonny Boy restoration, including the allocation of costs as between parts used for Sonny Boy and other parts retained by Airmotive.

In addressing the subpoena requests, the trial court exercised its discretion in deciding what categories of discovery, sought from the banks, were excessively overbroad and oppressive. The parties dispute the extent to which a defendant's financial records and status are discoverable pretrial (compare *Rawnsley v. Superior Court* (1986)

15

183 Cal.App.3d 86, 91 [holding that limits on discovery of a defendant's financial status does not apply where the documents sought are "fundamental" to proving the plaintiff's case] with *Doak v. Superior Court* (1968) 257 Cal.App.2d 825, 832 [noting that to allow pretrial discovery of a defendant's financial condition in the absence of a judgment, "even as an aid to settlement and subject to a protective order against disclosure to others, would be a serious invasion of privacy"]).  Even assuming financial records are discoverable pretrial, the trial court appropriately grounded its decision to sanction Vista in the breadth of the requests for financial information and resulting oppressiveness for the banks.

More specifically, it is implicit in the trial court's findings of overbreadth and oppressiveness that the sweeping requests for Airmotive's financial and tax records, as well as numerous categories of records pertaining to other aircraft projects unrelated to the restoration of Sonny Boy, imposed an untenable or oppressive burden on the nonparty banks.[4]

To highlight just one example of the expansive scope of the subpoena requests, Vista's subpoena request No. 3 states:  "All DOCUMENTS, including, but not limited to, letters, memos, emails, text messages, handwritten notes, schedules, work plans, logs, daily reports or other records, notes or other materials created or used by [Airmotive] (including independent contractors) to communicate from January 1, 2009 until the present, including enclosures and attachments, with each employee or non-employee of

---

[4] Vista asserts that the trial court disregarded its showing establishing the need to discover employee and payroll lists to enable it to identify potential witnesses involved in the Sonny Boy restoration or who worked on other projects which were underway at the same time.  This argument ignores the fact that the trial court retained the requests for employee information (including contact information) and payroll records for those employees and nonemployees or family members who were involved with Sonny Boy's restoration.  While the trial court narrowed the scope of those requests to individuals involved with the Sonny Boy project, there is no limit on Vista's ability to seek information from those individuals regarding parallel work on other P51 Mustang aircraft, or how their time was allocated, to the extent relevant to the claims here.

[the banks], . . . REGARDING any of [Airmotive]'s bank statements, or other accounts or FINANCIAL RECORDS."  The subpoenas defined "FINANCIAL DOCUMENTS"[5] as including, "in addition to periodic (such as weekly, monthly, quarterly, semi-annual or annual) financial statements, including income statements, balance sheets and statements of cash flow, check registers, journals including cash disbursements journals, time clock (punch) cards, financial projections, as well as charts of accounts, general ledgers, journals, trial balances and/or working papers created to prepare financial statements, loan applications, expense reports, tax returns and other financial reports, including federal and state income tax, sales tax, payroll tax, property tax, time cards, bank statements, payroll records, estimates, budgets, job cost reports, accountings, spreadsheets, inventory reports, invoices (which invoices would also include draft invoices) and the like of Airmotive Specialties[,] Inc., including any such financial records of David Teeters and/or Maricela Teeters REGARDING the financial information, income, expense, assets, liabilities, property or accounts of [Airmotive]."

In this single category, Vista demanded that the banks produce *all* documents over a nine-year period created or used by Airmotive to communicate with employees or nonemployees of the banks regarding any bank statements, accounts, or financial records—where, as noted *ante*, financial records appears to cover, without limit, everything from financial statements and balance sheets to tax returns (including property tax and payroll tax), payroll records, inventory reports, and invoices and draft invoices related to Airmotive.  Given the sweeping nature of this and other subpoena requests, we cannot conclude that the trial court erred in finding that the subpoenas (or at least certain

---

[5] We note that the term used in the subpoena request is "FINANCIAL RECORDS," while the term defined in the subpoenas' definitions section is "FINANCIAL DOCUMENTS."  Having reviewed the requests, it appears that the use of the capitalized (but undefined term) "FINANCIAL RECORDS" in lieu of the defined term "FINANCIAL DOCUMENTS" was inadvertent.

requests therein) were "grossly overbroad" and "oppressive." To the contrary, the record amply supports the trial court's assessment of the subpoenas.

To the extent that Vista contends that the trial court misunderstood the scope of the subpoenas and quashed requests which were critical to gathering verifiable financial information (since records provided to the banks by Airmotive would have predated any litigation or alleged motive to fabricate records, and because Vista had no alternative means to obtain those records in Airmotive's and/or the banks' exclusive possession), we decline to address the bulk of those arguments. What Vista seeks, in effect, is for this court to review at this juncture all aspects of the trial court's discovery rulings. But our jurisdiction is limited to the trial court's findings of overbreadth and oppressiveness underlying the sanction order.[6]

For these reasons, we conclude the trial court's finding that the subpoenas were overbroad and oppressive is supported by the record and consistent with the underlying legal principles that dictate the trial court's management of civil discovery.[7] Observing no error in the trial court's determination that "one or more of the requirements of the subpoena was oppressive" (§ 1987.2, subd. (a)), we decide that the trial court did not abuse its discretion in awarding a monetary sanction against Vista and/or its counsel.[8] We reject Vista's remaining arguments—many of which are not cognizable given the limited scope of this court's jurisdiction in this appeal.

---

[6] For example, Vista argues that Airmotive, as the objecting party, made no showing to support its claims that the subpoenaed financial records are protected by the right of privacy, and the trial court abused its discretion by treating them as such. But as set forth *ante*, the trial court's decision appears based on the overbreadth and expansive nature of the request rather than on the asserted right of privacy asserted by Airmotive.

[7] We note that in reaching this conclusion we do not address the propriety of the trial court's overall ruling on the motion to quash, which is not directly before us on appeal. Our review is limited to the trial court's exercise of discretion with respect to the sanction order.

[8] Vista does not challenge the amount of the sanction ordered.

18

## III.  DISPOSITION

The order awarding a monetary sanction of $6,180 against Vista Charters LLC and/or its attorney of record Robert Vantress, as set forth in the June 1, 2021 order on the motion to quash, is affirmed.  Respondents are entitled to recover their reasonable costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)

_____
Danner, J.

WE CONCUR:

_____
Bamattre-Manoukian, Acting P.J.

_____
Wilson, J.

**H049284**
*Vista Charters, LLC et al. v. Airmotive Specialities, Inc. et al.*